The last case on for argument is In Re.Application of XPO Logistics. XPO Logistics versus Elliott Capital Advisors. Mr. McGill, good morning. Good morning. Thank you, and may it please the Court, Matthew McGill for Elliott Capital Advisors. The District Court's decision to defer to proceedings in France should be reversed for two independent reasons. First, the order's key premise, that Elliott has identical discovery requests pending in Europe. And second, even if Elliott did have identical requests pending in France, and it does not, but even if it did, the District Court's decision to defer those requests until a French court rules is incompatible with the twin aims of Section 1782 that circumscribe the District Court's discretion in this case. So is it your position that you would like us to hold that a district judge considering these issues brought to it under 1782 in a separate proceeding here in this circuit in the Southern District, say, can never be stayed? I think they cannot be stayed indefinitely as they were done here, and I think that that is . . . Well, it seems to me they're a trigger point. I don't see how this is indefinite. Presumably something will happen in France, according to . . . which is a . . . what this is deferred in connection with. I think that the stay here has lasted over a year, and there is no fixed point for its termination. It is . . . Can it be applied for it to be lifted for any reason? The District Court's order doesn't provide for that. What it says is that the discovery is stayed until the French Court rules on Eliot's request for an expert, which . . . We . . . I mean, we've all practiced law here. I mean, you can get an order and then it issues a stay, and it seems to me it's up to counsel if you want to request that the court consider modifying that stay. We get those requests all the time in stays that we issue. Well, I think that that was true in Moses H. Cohn as well. The Supreme Court there said that the stay order in that case was, quote, technically amendable, but that did not alter the fact that in that case, the District Court had expressed its view that the key issues present in the federal court case there were to be decided in the state forum. And it was that act of really abstention that is reviewable, and that is what has occurred here. It is essentially an act of international abstention. The District Court said at page 9 of the Special Appendix that the French Court is better suited in the first instance to evaluate whether Eliot's request for discovery is appropriate. That is an act of abstention, and that is completely contrary to the twin aims of Section 1782. Section 1782 exists to provide efficient assistance to litigants in international forums. What the District Court did here, I would submit, is really invert the appropriate order of proceedings. Rather than provide efficient assistance to Eliot so that it may prosecute its claims in France, the District Court required Eliot to make progress in those claims in France in order to justify the availability of discovery here in the United States. That is exactly contrary to this Court's ruling in Mettelgesellschaft. In Mettelgesellschaft, the District Judge expressed a wish to have the proceedings considered first in Germany at a hearing that, on the facts of Mettelgesellschaft, was only eight days away. And this Court took an emergency appeal and reversed that as an abuse of discretion. And it said in that case that it was, of course, understandable that the District Court might want the foreign court's views, especially when they were so close in time. But that would frustrate the aims of Section 1782. And that's why this Court reversed it as an abuse of discretion in Mettelgesellschaft. And that, not in a holding of Mies v. Buiter, but the same reasoning is there again stated as advice to the District Court on remand in Mies. Excuse me, did the Magistrate Judge grant any of the discovery requests that had been made under this statute? Yes. Right. So, some were granted and some were stayed, and the District Court then affirmed, right? The District Court overruled our objections to the extent that they were denied. Right. Yes. So, it's not as if, on a wholesale basis, the District Court said that, you know, we're going to abstain here. They granted some of the discovery requests and stayed some of them. And your objection is to the ones that were stayed because the statute, your construction of the statute is that it's intended to help the parties to get the information needed for the foreign proceeding. Well, this Court has held since Malev in 1992 that the District Court's discretion is circumscribed by the twin aims, the first of which is to provide efficient assistance to foreign litigants. And it is our submission that requiring a litigant to obtain the approval, essentially, of the foreign forum to get that foreign forum's view that the discovery is appropriate is incompatible with that twin aim. Now— The District Court rejected any construction of what happened in these proceedings as amounting to requiring the French Court's approval before discovery could proceed, right? I mean, the District Court, that's not how the District Court understood the Magistrate Judge's day. Well, the District Court, I agree, put a different twist on the order. I mean, the Magistrate said she wanted the French Court's view on whether Elliot's discovery was appropriate. That's the Magistrate's words at Special Appendix 9. The District Court, in overruling our objection, took it as a way of ensuring that our discovery was not duplicative. And this Court rejected precisely that reasoning in the Euromipa case at footnote 5 of Euromipa. In that case, it was brought to the Court's attention that supposedly identical discovery requests were pending in France. It's another case involving France. There are about 7,000 documents produced here. What I'm having trouble understanding about your argument is an amount to saying that a stay would always be inappropriate because it would insert some amount of delay in the District Court's determination as to whether assistance should be provided under the statute. You can think of many circumstances where another court's further statement about what proceedings are ongoing in another jurisdiction would be helpful in determining the 1782 statute. I don't think the Court needs to hold that every stay is impermissible. But I would offer two data points for the Court's consideration. One is Metal-Gaselshaft, where the hearing was only eight days away, and the Court of Appeals said that was an abuse of discretion to deny discovery in the face of a hearing that was just eight days away. But I think that it's clear here that the Court did not really grant the stay with the views of the twin aims of the statute in mind. The District Court wanted the French Court's views not because it would efficiently assist Eliot's litigation or because it would encourage France to provide similar discovery in other proceedings. It did so because it did not want to have to take what it saw as a position on foreign law. This Court has repeatedly said you should not take a position on foreign law. Instead what you should do is grant the discovery and let the foreign court sort out for itself. And here . . . So every request under 1782 is automatically granted in your view? No, that's not true either, Judge Holt. All right. Well, but that's sort of what you implied in what you just said, so grant the discovery and then let the foreign court sort it out. I apologize if that were the implication of what I said and if that's not what I intended. All right. But the . . . How do we draw this line? What do we tell the District Court here? I think what you should tell the District Court here is that it was an impermissible . . . it was not permissible to stay the litigation for an indefinite period of time pending a decision in France that may come out, you know, at date uncertain, that the twin aims of the statute require in this instance for the discovery to be granted. The stay has already persisted for more than a year. What's the status of the French proceedings at this point? Have the proceedings that the District Court stayed, its consideration of the issues in deference to or in contemplation of already been decided? No. They have not. And . . . Why not? The brief indicated that there was a hearing scheduled for September 5th. Did that take place? It did. And there's another hearing scheduled for the 28th of November. But those hearings are to address what amount to Eliot's derivative claims against the Board of Directors of Norbert de Tresongel. It is not to address the expert. It is our hope that if this Court vacated the decision below and we obtained the discovery we seek, that we would in fact bring that to the French Court as part of our evidence to further substantiate our claim for an expert. I do have to make this point that there is no basis at all for the District Court's view that we have identical discovery pending in France. I'll just say two things about this. First, this Court in Euromipa recognized that discovery in France is done on a document by document basis and Judge Jacob's dissent at page 1104 recognizes that there is no categorical discovery in France. XPO's own expert recognizes this at page 25 and 26 of the Joint Appendix at paragraphs 6 through 10 of his declaration that he made when XPO was seeking 1782 discovery from Eliot. He says, quote, I'm quoting now from Joint Appendix 27, a French Court would generally lack the ability to order the production of documents sought through the 1782 application. Further quoting, additional constraints apply to documents located abroad, which would make it impossible for a French Court to order the production of any documents held in the United States in the timeframe applicable here. This is, there is no categorical discovery in France. The District Court erred when it based its view on anything other than that. I think if you also look at the Joint Appendix at pages 483 to 487, 485, excuse me, you will see a translation of Eliot's legal pleading that requests the expert. And what Eliot is, the request for an expert is the request for the appointment of what amounts to a special master to investigate the entirety of the relationship between ND and XPO. That expert can request documents, again, on a document-by-document basis. But that doesn't somehow transform our request for an expert into a request for discovery. And the District Court's decision in this case is unmistakably bottomed on that mistaken premise that is, and that is an error of French law that this Court should and should correct. And it's our position that it's de novo review, and we think that's established by the second year OMIPA case in footnote two. But even, again, if we had the exact same discovery pending, and we don't, but even if we did, we think here the twin aims of the statute dictate that the discovery be granted rather than that the French Court's views be solicited. Well, we're more than likely to send it back, if we agree with you, send it back to the District Court and have the District Court enter whatever order is appropriate in that Court's determination, right? I mean, that's what needs to be done here. I understand. You're not asking us to do that. You want us to enter the discovery order? I think, I'm sorry, I misunderstood your question. The way we get to the relief that you are requesting, I would suggest, but tell me if I'm misunderstanding this, is remand it to the District Court and have her lift the stay and then continue contemplating what to do with the 1782 request. Our position that the more appropriate response would be what the Court did in your OMIPA, which was to remand for the entry of an appropriate discovery order. Appropriateness being what's appropriate in view of the District Court in the first instance. I think as the District, I apologize, I don't want to leave this unstated. I think the District Court should be, as happened in Meese, should be advised of the relevant guideposts that need to guide its discretion, right? Thank you, Mr. McGill, and you've reserved some time for rebuttal, and Mr. Schuster, you'll have plenty of time, so. Michael Schuster, may it please the Court, for XPO. There is a threshold question of jurisdiction to hear this appeal. We've moved to dismiss the appeal, but the District Court's order is not a final order under Section 1291. It's just not. That's manifest from the face of the order, because in the order, the District Court says, among other things, in Judge Netburn's original order, the January 8 order, that the decision of the French Court will assist this Court in evaluating, further evaluating the discovery requests. So the District Court did not consider itself to be done with the issue. The District Court did not consider those proceedings to be at an end. In every other Section 1782 case that Elliot is relying upon, there was a final decision, one way or the other. A decision in Metal Gesellschaft, in Euromipa, in Brandy Dorn, in Milev, denying the discovery. Here there has not been a decision denying the discovery, and there was a decision by Judge Schofield on September 14, 2015, in which Judge Schofield said, after lengthy oral argument, I'm not persu—Elliot has already had substantial discovery, which it was awarded, but I'm not persuaded that the additional categories of discovery that Elliot wants are relevant to the claims and defenses that have been asserted in the French proceedings. Elliot, and the Court ruled, the discovery you seek is not relevant. I'm not persuaded it's relevant. Elliot then moved to lift that, to renew its motion to compel that discovery. So it was at that point that Judge Schofield referred the matter to Judge Netburn for further consideration, but it's—and then Judge Netburn, after hearing the argument, rather than deny the discovery that Elliot sought, said, I don't see the relevance. She expressly said, you've argued this to Judge Schofield. She didn't see the relevance. Let's hear from the French Court. Maybe what the French Court has to say will shed more light on this. That's all she did, did not defer decision to the French Court, did not cede her jurisdiction to the French Court, did not say to Elliot, you must exhaust all avenues for obtaining discovery in the French Court, and did not say, I want to know whether this material is discoverable in France. What she said was, you haven't persuaded me. I want to hear what the French Court has to say because that will bear on this Court's ultimate determination of the relevance and appropriateness of this discovery. Elliot had four different opportunities to argue for the relevance of this discovery. In an August 4 telephone conference before Judge Schofield, in an August 6 telephone conference before Judge Schofield, these were lengthy telephone conferences. They were transcribed. They go on for pages. Judge Schofield in the August 6 conference, telephone conference said, I don't want to keep this case, but I'm going to keep this case because much of what is to follow in this application stems from rulings that I have made. She also said, she then conducted oral argument in court, oral argument after two telephone conferences where these same issues were addressed and where Elliot had the opportunity to argue for the relevance of this material. So ultimately what Judge Schofield ruled was, I don't see the relevance at this material. It seems to me, without prejudice to some other point, it doesn't make sense to me at this point to require them, meaning XPO, to produce the categories that have been outlined. She said, I'm going to rule and what I'm going to say is that you're not entitled to the information Elliot, without prejudice to renewing it at a later point when you can explain it to me. That's a joint appendix 326. Elliot chose to renew its application. That's what it did on October 27 of 2016. That's what went to Judge Netburn and that's when Judge Netburn said, I've heard you, Judge Schofield has heard you, we aren't persuaded, let's hear from the French court. The French court will assist, what the French court has to say will assist this court in evaluating the decision. So coming to the question of appealability and jurisdiction, what Judge Netburn said in her January 8, 2016 order, what she repeated in her March order, March 2015 order, 2016 order denying the motion for reconsideration was, this court will ultimately decide this issue but first we want to hear from the French court. In that posture, we don't have a final decision for this court to review. Even if we had a final decision for this court to review, given the circumstances that I've just outlined. Can I just stop there on the lack of a final decision? We have said a stay may be appealable if it imposes an indefinite period in which no decision will be reached. As I understand this matter, there are monthly updates back to the court and there has been no subsequent application to that court to reconsider the month by month determination? No. That is correct that the original order of Judge Netburn, the January 2016 order expressly requires, that's a shared appendix, special appendix 6, the parties are to provide the court with a status report every month. We've been doing that. The Judge Netburn also directed the parties to promptly make available to this court a certified English translation of the French court's decision on Elliott's application. So, it's not really an indefinite stay. It's a stay pending a decision by the French court. This is not the sort of stay where it's functionally equivalent to a dismissal because the district court doesn't intend to do anything else in the case. This is a stay with a particular specific end date in mind, which is something happening in the French court's proceedings. So coming to a brief ... If the French court refuses to address this, or is it ... what will happen? Elliott is ... Or, I guess the other part of the second question that's its companion, is the French court going to make some decision that isn't going to be informative in any event? Or don't we know? That's possible. I can't, you know, I can't say that what the ... What we judges do is incomprehensible. Well, what the district court, what judges Netburn and Schofield believe is that at this point, having heard everything Elliott has to say on the subject, multiple oral arguments with written submissions, submissions of French counsel, maybe what the French court has to say will shed some light. As Judge Gariff has pointed out, there's no outright denial of discovery here. And as this court has stated in several of the decisions cited by my friend, Mr. McGill, this court prefers the district courts give at least partial relief under Section 1782, tailored relief, rather than an outright denial. That's what the district court did here. Maybe what the French court says will help. Maybe it won't. But the district court is looking for help because it's heard everything Elliott has to say. And again, I have to emphasize, the district court gave Elliott a ruling, the language I just read to the court in September of 2015, that said, you haven't persuaded me. I don't find this relevant to the claims and defenses, the way you've explained things. I am denying your request for this material. Let me just ask you, you know, there's a term in international law having to do with harmonization of laws among countries so that they help each other. And I think one of the arguments being made by the appellant is that to delay is to deny in effect. And the longer the French court takes, whatever it comes up with, the end result from the day will be in effect a denial of this information, which might be helpful to the French court. How do you respond to that? Well, let me say first and foremost about that is that both parties here have been ordered to make extensive document productions. The parties have been ordered to give depositions. In the end, they agreed they wouldn't. But that was an agreement of the parties the court ordered. So the court ordered extensive document productions here. The documents that each site has obtained have been used in the French proceeding. But the district court must retain some discretion, applying Rule 26, applying the intel factors to say I'm giving you what I think is reasonable and appropriate and fair, some of what you're asking me to give you. You know, without saying it, I find it to be harassing and overbroad and not warranted. So and the other point I want to make is that goes to the argument that a stay is effectively a denial, that goes to the question, in my mind at least, of finality. So if this court were to construe the stay as a denial, then this court would find or reviewing the jurisdiction, right? But the denial would not be an abuse of the district court's discretion because the district court granted discovery. The district court, in fact, as is reflected in the hearing transcripts in the joint appendix, supervised discovery in considerable detail, actually took argument on electronic search terms, took extensive argument on what custodian's files would be reviewed by XPO, set specific dates for a rolling production by XPO. So the district court, there's no outright denial here. What there is is a decision by the district court in the exercise of its discretion, taking all of this into account, yes on much of it, no on some of it. So even if it were a denial, I would suggest that under the cases, the district court was well within the sound exercise of its discretion in reaching the conclusion that it reached on the specific items of discovery that are now in question. And the no is effectively a no because further consideration of that, or let me try to re-characterize it. Judge Schofield's decision is, I don't think this is relevant, but I'm going to stay this because maybe the French court will tell me something that will help you guys persuade me that it is relevant. Judge Schofield's original decision was, I don't find this relevant without prejudice to your right to try to come back to me and persuade me. Maybe at that point, Elliott could have appealed. It chose not to do so. It chose to go back to the district court. It was at that point, after saying I don't find this relevant, that the district court said, I still don't find this relevant. You're telling me it's needed in the French proceeding. I want to hear from the French court because you haven't persuaded me of the proposition. Thank you. And Mr. McGill, rebuttal. Thank you, Your Honor. On the jurisdictional point, my friend Mr. Schuster has acknowledged what the district court's order is, is a stay pending the decision of the foreign forum. That is an act of international abstention and like any international abstention case that is stayed pending the decision of the foreign forum, it will come back eventually to the federal court. Would you disagree with the characterization that effectively the answer from the district court is no, you don't get this discovery, but as an alternative, which seems to me to be maybe splitting the baby inappropriately or maybe not, but trying to be helpful. But we'll stay it because the French court may tell us something that then persuades me that it is relevant. I don't think that is a completely accurate characterization of what the district court did here. The district court stayed the discovery because it didn't want to make the relevance determination. I thought, did your adversary mischaracterize the timeline there? That the answer was no, but you guys can apply again. Then you applied and she said, no, I'm going to refer it to the magistrate judge. Magistrate judge says, eh. The magistrate's order, with all respect to my colleague, the magistrate's order doesn't say anything about relevance. Did you or did you not below argue the relevance of what it is that's still at issue? The district judge, Judge Schofield, initially . . . Did you or did you not argue the relevance of what is still at issue? Yes, we absolutely did. This case became exactly the battle by affidavit of experts that Euromipa decries. We submitted expert testimony that says this is transparently relevant to our claims in France and their experts said it's absolutely not relevant. Euromipa says district courts should not attempt to make that determination, but the district court's answer here was to say, French court, you make the determination. That is inconsistent with the twin aims of the statute. It is rather what Euromipa suggests is what the district court should do in that type of situation. It should grant the discovery and then the foreign forum can determine for itself what is appropriate to submit and what is not. That's why in Brandy Dorn, a much more recent case, this court said a district court should not consider admissibility. That's page 82 of 673 F. 3rd, should not consider admissibility. I think that . . . Admissibility and relevance are not coextensive. They are not exactly the same, but I do think that . . . what Mr. Schuster is advocating for amounts to an admissibility requirement. That we demonstrate in advance that the discovery is going to be somehow taken up by . . . The rules are relevant or admissible or lead to . . . That would assume . . . what the district court has done here is say the French court will . . . what the French court says goes. That would assume that the French court has the same view of relevance that guides our discovery that we do. Of course, it does not. The French court has an entirely different system of fact development that is . . . section 1782 is intended to supplement. That is why this court has said for well over 20 years that every act of discretion must be guided by these twin aims of providing the efficient assistance and encouraging foreign forums to do likewise. They . . . Justice Alito. Isn't what the district court did was say, I'm not convinced that this discovery . . . part of the discovery request meets the standard of the statute and it would be helpful to have some information from the French court or if you're not happy with that, you can still come back to us because I'm retaining jurisdiction. Is that an abuse of discretion on the part of the district judge? I think, just so I'm clear on this point, there's no dispute that the statutory requirements are satisfied. The question is whether the district court here appropriately exercised its discretion and this court has always said that the discretion must be guided by these twin aims and it is our position that an indefinite stay for a decision of a foreign forum as to whether the discovery is appropriate is not compatible with the aim of providing efficient assistance. It is, in effect, the same foreign exhaustion requirement that was overturned in Malev. You're saying the district court has only two options, to grant or deny and then someone takes an appeal from a foreign . . . I resist that, Your Honor, because . . . My friends on the other side have cited Alves Braga as the Southern District of Florida case. In that case, the district court stayed the discovery for a fixed period of time. That's not what went on here. This was a discovery pending the foreign court's decision. I think if that were permitted, then Judge Grisey's decision in Meadow-Gaselshaft should have been affirmed because all he did was say, I want to see what the German court's going to do eight days from now. Then the decision in Malev also should have been affirmed instead of reversed because that court wanted to see what the Hungarian court was going to do. So I don't think it is ever permissible for a court to say, I'm going to stay your 1782 discovery proceeding pending the outcome of a foreign discovery proceeding. And it's especially impermissible when the discovery proceedings are in no way parallel, as is the case here. And that is an independent basis. Is it your view, Mr. McGill, that the issue of relevance is a non-issue? No, the relevance is an issue. But the relevance of the four categories here that are at issue was considered. And there is no, I don't think the district court's order fairly can be read as saying that the categories that we're seeking are not relevant. What the district court has done- We may get that answer if we ship it back. But that's exactly what the, then that is not, that is inconsistent with the twin aims. If a district court can say, I am not going to grant discovery. I'm going to make the foreign court first tell me whether the discovery is relevant, which is what is the current characterization. We send it back and say, district court, you decide this issue. Yes. You're going to take your chances and say, all right, it's not relevant. Then it comes up to us again. Not this panel, I will assure you. And then it will be up to that panel, the panel of this court to determine whether the district court abused its discretion. I will take that chance because I think the discovery, the four categories that we're seeking are transparently relevant to our claim that XPO is stripping value out of the Norbert de Tresongel company. But to the extent you're asking a question about finality, there is no doubt that there has been a stay pending the decision of the foreign forum. And the decision to stay the case pending the foreign forum's decision, that much is final. And that's an act of abstention that is reviewable. Just like a Pullman abstention case, just like an international abstention case. So I wanted to make sure that we did not leave that. Just to ask one more question. What is the function of this monthly report that the parties are involved in? Has nothing to do with what's going on in France? Or what's left? I don't know what the function of the monthly report is. The order of the district court is quite clear that this discovery is stayed until there is a decision on our request for an expert. And that is why the district court at special appendix six requests a certified copy of a translation of that order. The monthly status reports are typically less than a page and they describe what has transpired in the French litigation, what hearing has been set. And I think three out of the six of them that have been filed say nothing has happened since the last report. They are not a substantive requirement. I don't think it changes in any way the abstention analysis here. In fact, I believe on the facts of Moses H. Cohn, there was a similar requirement. Thank you very much, Mr. McGill. Thank you. The remaining two cases, Jones versus International Organization, International Union, and United States versus YAR, are on submission. I'll ask the clerk please to adjourn court. Court is adjourned.